# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

LIZABETH RAMOS TROCHE,

  Plaintiff,

  v.

ACTING COMMISSIONER OF SOCIAL
SECURITY,

  Defendant.

CIV NO.: 14-1742 (MEL)

## OPINION AND ORDER

### I.   PROCEDURAL HISTORY

     Lizabeth Ramos Troche ("claimant" or "plaintiff") was born in 1969 and completed four years of college. (Tr. 355, 359.) On March 5, 2011, she applied for Social Security disability insurance benefits ("DIB"), alleging disability on the basis of severe major depressive disorder, s/p facial palsy, and epilepsia.[1] (Tr. 356, 358.) In her application for DIB, claimant alleged that she had been disabled since February 19, 2010. (Tr. 355.) The date last insured was December 31, 2011. (Id.) Prior to her initial application for DIB, she worked as a nurse. (Tr. 70.) Claimant's application was denied initially on December 20, 2011, and again upon reconsideration on May 9, 2012. (Tr. 50, 54.) The Administrative Law Judge ("ALJ") held a hearing on May 16, 2013. (Tr. 9.) Claimant waived her right to appear and testify at the hearing, but was represented by counsel. (Tr. 15.) A vocational expert ("VE") testified by telephone. (Id.) At the hearing, in addition to the conditions listed in her DIB application, claimant's attorney testified that she was suffering from migraines and neck pain. (Tr. 35.) On September 17, 2013, the ALJ rendered a decision, finding that claimant was not disabled from February 19, 2010 through December 31,

---

[1] Claimant does not appeal the ALJ's findings regarding the latter two conditions.

2011. (Tr. 26.) The Appeals Council denied claimant's request for review on August 2, 2014. (Tr. 1.) Therefore, the ALJ's opinion became the final decision of the Commissioner of Social Security (the "Commissioner" or "defendant"). Id.

On October 10, 2014, plaintiff filed a complaint seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706. ECF No. 1, ¶ 2. On April 13, 2015, defendant filed an answer and a certified transcript of the administrative record. ECF Nos. 10, 11. Both parties have submitted supporting memoranda of law. ECF Nos. 17, 20.

## II. DISCUSSION

The Social Security Act (the "Act") provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Irlanda-Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's decision must be upheld if the court determines that substantial evidence supports the ALJ's findings, even if a different conclusion would have been reached by reviewing the evidence de novo. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The Commissioner's fact findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

### A. Treating Physicians

Claimant first alleges that the ALJ misapplied the law by failing to give due attention to the findings of her treating neurologist, Dr. José A. Acevedo Batista ("Dr. Acevedo"), who diagnosed her with common migraine. (Tr. 221–22, 226.) Dr. Acevedo's report, dated March 1, 2013, explains that he treated claimant every two to three months from April 8, 2012 until November 29, 2012 and describes the limitations resulting from these migraines. (Tr. 222.) Also

2

included on the record are treatment notes from November 29, 2012 and April 2, 2013. (Tr. 181, 212.) According to Dr. Acevedo, claimant had sudden headaches in the left temporal region lasting twelve hours about three times a week. (Tr. 222–23.) On a scale of one to ten, the severity ranged from a six to ten. (Id.) Other associated symptoms included vertigo, nausea/vomiting, malaise, photosensitivity, and left facial and arm weakness. (Id.) Bright lights and noise made the headaches worse, whereas lying in a dark room, medication, and silence make them better. (Tr. 223.) Ultimately, Dr. Acevedo determined claimant would be capable of a low stress job. (Tr. 224.) She would be limited, however, in that she could not work night shifts or in a high temperature workplace and would likely be absent from work about four times a month. (Tr. 224–25.) These findings were not incorporated into claimant's residual functional capacity ("RFC")[2] finding.

The ALJ will generally afford greater weight to opinions of treating sources, because those are likely the "most able to provide a detailed, longitudinal picture of the claimant's medical impairments." Berríos Vélez v. Barnhart, 402 F.Supp.2d 386, 391 (D.P.R. 2005) (quoting 20 C.F.R. § 404.1527(d)(2)). To be entitled to this controlling weight, the treating physician's opinion must be "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] record.'" Polanco-Quiñones v. Astrue, 477 Fed. App'x, 745, 746 (1st Cir. 2012) (quoting 20 C.F.R. § 404.1527(d)(2)). "The opinion of such a treating physician can be rejected if it is inconsistent with other substantial evidence in the record." Agostini-Cisco v. Comm'r of Soc. Sec., 31 F.Supp.3d 342, 347 (D.P.R. 2014).

---

[2] An individual's RFC is the most that he can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1).

When the ALJ finds that the opinion of the treating physician does not require controlling weight, the ALJ must state "good reasons" for this finding. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). To satisfy the requirement of giving good reasons the ALJ's opinion must contain sufficient information to allow the reviewing court to determine the weight given and the reasons for that weight. See Hudon v. Colvin, Civ. No. 14-cv-569-JL, 2016 WL 310741, at *2 (D.N.H. Jan. 26, 2016) (quoting SSR 96–2p, Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinion, 1996 WL 374188, at *5 (S.S.A. 1996)); López-González v. Comm'n of Social Sec., 59 F. Supp. 3d 372, 379 (D.P.R. 2014).

Here, the ALJ expressed both the weight given and the reasons for that weight. The ALJ explicitly stated that she gave no weight to Dr. Acevedo's report. (Tr. 25.) The ALJ explained that this weight was given because the report was "conclusory, unexplained and unsupported." (Id.) Admittedly, the ALJ does not elucidate how she reached these findings; however, additional factors support the ALJ's finding.

First, although claimant brought migraines to the ALJ's attention at the hearing, she did not allege migraines when she applied for DIB. (Tr. 35, 359.) Second, and most importantly, Dr. Acevedo's treatment of claimant occurred entirely outside of the covered period. Claimant's insurance expired on December 31, 2011, but her first visit to Dr. Acevedo occurred on April 8, 2012. To qualify for Social Security disability benefits, a claimant has the burden to show that she was disabled during the coverage period, which is the time period between the alleged disability onset date and the date last insured. See 42 U.S.C. § 416(i); Alcaide v. Sec'y of Health & Human Servs., 601 F.Supp. 669, 672 (D.P.R.1985); Sampson v. Califano, 551 F.2d 881, 882 (1st Cir.1977). While courts have reached different conclusions as to whether post-coverage medical evidence should weigh in determining if a condition was disabling during the coverage

period, see Alcaide, 601 F.Supp. at 672–73 (collecting cases), the First Circuit has held that "[m]edical evidence generated after a claimant's insured status expires may be considered for what light (if any) it sheds on the question [of] whether the claimant's impairment reached disabling severity before his insurance status expired." Padilla Pérez v. Sec'y of Health & Human Servs., 985 F.2d 552, *5 (1st Cir.1993) (unpublished) (citing Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 81 (1st Cir.1982)) and Alcaide, 601 F.Supp. at 672–73). "It is not enough for the claimant to establish that an impairment which disabled him from working after his insured status expired had its roots before then." Padilla Pérez, 985 F.2d at *1. Plaintiff does not argue, let alone point to evidence showing, how Dr. Acevedo's report sheds light on her condition prior to the expiration of her insured status. The only two records within the insured period of relevance do not support this link. On August 25, 2011, during an examination by consultant psychiatrist Dr. Alberto Rodríguez Robles ("Dr. Rodríguez") claimant appeared to have nausea and a headache. (Tr. 103.) He made no expression, however, regarding whether this was a migraine or just a typical headache. Nor did he make any findings regarding whether this headache was part of an underlying migraine disorder. On December 9, 2011, consulting neurologist Dr. Reinaldo J. Carreras Garcia ("Dr. Carreras") diagnosed claimant with, among other impairments, migraine and tension headaches. (Tr. 484–85.) Dr. Carreras did not provide any detail regarding the nature or character of her migraines other than to indicate that he had ruled out cervicogenic headaches. (Tr. 484.) Without this information it cannot be automatically concluded that claimant's condition was the same at this single visit in December of 2011 as it was more than three months later. Perhaps her migraines had their roots before the insured period expired, but it is claimant's burden to show that they reached disabling severity prior to expiration.   Even assuming Dr. Acevedo's report indicates claimant's condition eventually

reached disabling severity, it does not inevitably shed light on the severity of claimant's condition at the time in question. Therefore, the ALJ's decision to not give Dr. Acevedo's report controlling weight is not reversible error.

Regarding treating physicians Dr. Alfredo Pérez Canabal ("Dr. Pérez"), a neurologist, and Dr. Ferol Fils Lamour ("Dr. Fils Lamour"), a general medicine specialist, the ALJ made no expression of the weight given. Dr. Pérez treated claimant from at least four years before the alleged onset of disability until sometime in 2011. The only significant information that can be gained from his records are positive Phallen and Tinell tests on May 5, 2010 and January 31, 2011. (Tr. 132–133.) As defendant accurately identifies, claimant never explained to the ALJ or brought evidence to show what functional limitations arise from the results of these two tests. ECF No. 20, at 8. The physician's records do not elucidate this point.

Dr. Fils Lamour treated claimant numerous times between July 7, 2010 and December 14, 2012. His treatment notes remark on multiple laboratory tests, including a T4 total test, lipid profile, a cholesterol and triglycerides test, a TSH 3rd Generation test, and an EEG. (Tr. 194, 198, 205–07, 209.) On January 24, 2011, he noted palpable nodules on the right hand.[3] (Tr. 208.) In relation to claimant's headaches/migraines, Dr. Fils Lamour's treatment notes included a notation stating: "Education – avoid noise, avoid light." (Tr. 201.) Multiple treatment notes reference a diagnosis of fibromyalgia, but there are no further discernable details. (Tr. 197, 199–200.)

The ALJ is only obligated to give "give good reasons" for giving a treating physician's medical opinion less than controlling weight. 20 C.F.R. § 404.1527(c)(2). Medical opinions are

---

[3] Claimant states that prior to this date, on October 6, 2010, Dr. Fils Lamour noted "the existence of pain of both hands, and DJD (Degenerative Joint Disease) over all the fingers, and also reported 'fingers of hands painful to palpitation', and osteoarthritis." ECF No. 17, at 22. One notation is not inconsistent with a finding of osteoarthritis, but the remainder of these claims cannot be readily discerned from the written notes.

defined as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Merely indicating the results of tests or tracking the treatment of claimant without any further elaboration on the meaning or limitations resulting therefrom does not constitute a judgment about the "nature and severity" of claimant's impairments. See Moua v. Colvin, 541 F. App'x 794, 797 (10th Cir. 2013) (finding treatment notes that merely "document [claimant's] complaints and chronicle the pain medications and treatment he prescribed for her" did not constitute a "medical opinion"); Mushtare v. Colvin, No. 7:14-CV-0826 GTS, 2015 WL 3901981, at *5 (N.D.N.Y. June 25, 2015) (finding that treatment notes that "contain records of symptoms and diagnoses but are devoid of judgments regarding what Plaintiff can or cannot do relative to his diagnosis and symptoms . . . do not constitute medical opinions"). Plaintiff does not identify any judgment constituting a medical opinion that was put forward by either Dr. Fils Lamour or Dr. Pérez. Therefore, there was no medical opinion for the ALJ to disregard and no good reasons can be required.

B. Fibromyalgia

Plaintiff further contends that the ALJ did not adequately analyze her diagnosis of fibromyalgia. Dr. Acevedo listed fibromyalgia amongst her "active" problems. (Tr. 221–22, 226.) Multiple of Dr. Fils Lamour's treatment notes reference fibromyalgia. (Tr. 197, 199–200.) However, this diagnosis was neither asserted in claimant's disability reports nor brought to the attention of the ALJ at the hearing. "An administrative law judge cannot be expected to comb often voluminous administrative records for a single mention of an impairment that might, with further investigation, become significant, particularly where, as here, the claimant is represented

by an attorney at the administrative hearing." Clarke v. Colvin, No. 2:13-CV-377-GZS, 2015 WL 1206495, at *15 (D. Me. Mar. 17, 2015).

Furthermore, based on the absence of details to support this diagnosis on the record, any failure to discuss fibromyalgia is harmless error. "The First Circuit has applied a 'harmless error' rule in Social Security benefit cases." Ward v. Apfel, No. 98-168-B, 1999 WL 1995199, at *3 (D.Me. June 2, 1999) (citing Pérez Torres  v. Sec'y of Health and Human Servs., 890 F.2d 1251, 1255 (1st Cir. 1989)). Plaintiff does not point to the doctor who performed the evaluation that led to this diagnosis. Although fibromyalgia is not a condition that can be diagnosed by laboratory tests, in order to be considered a medically determinable impairment, the diagnosis must be supported by the criteria found in Social Security Regulation ("SSR") 12–2p, 2012 WL 3104869, at *2–3. This includes either a finding that claimant had eleven out of eighteen specific tender points or that claimant had a history of six or more symptoms commonly associated with fibromyalgia. Id. Here, however, there is no analysis at all. In the case of Dr. Acevedo, fibromyalgia was listed as an "active" problem, but there is no indication that he was the one who diagnosed this nor any further details on the diagnosis. Dr. Fils Lamour's records list a history of fibromyalgia, but again no supporting detail or diagnostic technique. The plaintiff has not identified any details that, on remand, would allow the ALJ to find fibromyalgia was a medically determinable impairment from which she suffered. Thus, any error in failing to discuss this "diagnosis" is harmless.

C.  Mental Health Limitations

With respect to her mental health, plaintiff contends that the ALJ's hypothetical to the VE did not sufficiently address her limitations in attention and concentration. On August 25, 2011, consulting psychiatrist Dr. Rodríguez concluded claimant's attention and concentration

were poor. (Tr. 103.) Further, Dr. Rodríguez found claimant easily distracted and unable to "follow the backwards sequence of the months." (Id.) Dr. Jusino Berríos ("Dr. Berríos") completed a residual functional capacity assessment on September 10, 2011. (Tr. 469.) He found claimant was moderately limited in the following: ability to understand, remember, and carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to complete a normal workday/workweek without interruptions from psychologically based symptoms requiring an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; ability to respond appropriately to changes in the work setting; and ability to set realistic goals or make plans independently of others. (Tr. 480–83.)

Plaintiff believes the ALJ "did not do an adequate job of 'clarifying the outputs . . . and accurately transmitting the clarified outputs to the experts in terms of assumptions.'" ECF No. 17, at 24–25 (quoting Arocho v. Sec'y of Health and Human Services, 670 F.2d 374, 375 (1st Cir. 1982)). The ALJ here noted claimant's "problems with concentration and memory," and, as a result, limited claimant's RFC to "unskilled work that is simple and routine." (Tr. 23.) In making this finding, the ALJ specifically delineated the amount of weight she was granting the different aspects of the medical source opinions. (Tr. 24.) The hypothetical to the VE included that claimant "has an ability for unskilled work that is simple and routine." (Tr. 41.) A hypothetical need not reflect each finding of each physician, but rather needs only to "reasonably incorporate the disabilities recognized by the ALJ." Camacho v. Astrue, 978 F.Supp.2d 116, 122 (D.P.R. 2013). This incorporated claimant's limited ability to concentrate and maintain attention by excluding jobs with more complex duties. See Boyce v. Colvin, No. 1:13-CV-00381-JAW, 2014 WL 5473237, at *4 (D. Me. Oct. 27, 2014) ("This court has repeatedly upheld limitations to simple, routine, and/or repetitive work when the claimant has been found to be moderately

limited in the area of concentration, persistence, or pace."); <u>Sohm v. Astrue</u>, No. 3:07CV257–J, 2008 WL 2437541, at *3 (W.D. Ky. June 13, 2008) (finding that hypothetical question was supported by substantial evidence where moderate limitation in abilities to maintain concentration, persistence and pace were not expressly mentioned but, "[i]nstead of enumerating particular ways in which the limitations might affect [plaintiff], the ALJ simply assumed the inability to perform in certain ways ... [such as] assum[ing] that [claimant] could do only 'simple, repetitive work.'"). As this is an appropriate method of conveying attention and concentration limitations to the VE, the ALJ's hypothetical was sufficient.[4] Therefore, the VE's testimony that plaintiff could function as a surveillance system monitor, account investigator, or furniture rental consultant constitutes substantial evidence.

Based on the foregoing analysis, the Commissioner's decision is hereby **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2016.

s/Marcos E. López
United States Magistrate Judge

---

[4] Although not dispositive on this issue, it is worth noting that plaintiff's hypothetical to the VE does not bolster her argument. Rather plaintiff's hypothetical is subject to the exact flaw that plaintiff identifies. She added to the ALJ's hypothetical, "that this claimant cannot pay attention or concentrate because she is easily distracted for more than 45 minutes to one hour nonstop." (Tr. 44.) The VE was unable to answer the question as asked. (Tr. 44–45.) Plaintiff tried to clarify the limitation as "a person who after 45 minutes of sitting down doing a job is going to lose concentration." (<u>Id.</u>) The VE complained that "the question is a little vague." (Tr. 45.) The claimant would still be able to work, according to the VE, "[i]f the person after 45 minutes loses their concentration for one minute while they're stretching and then goes back to work . . . ." (<u>Id.</u>) "But if they are more than seven minutes every hour without being able to concentrate—for example, they just concentrate for 45 and then the next 15 they can't," the VE explained there would be no positions that claimant could perform. (<u>Id.</u>) Plaintiff did not ask any further questions or seek any further clarity regarding this point.